Filed 2/10/16

## <u>CERTIFIED FOR PARTIAL PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JAMES TILTON RUFF,<br><br>    Defendant and Appellant. | F068131<br><br>(Super. Ct. Nos. BF142935A,<br>BF143806A, BF146935A,<br>SF016996A)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County. Michael E. Dellostritto, Judge.

Suzanne M. Morris, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and Sarah J. Jacobs, Deputy Attorneys General, for Plaintiff and Respondent.

---

\*     Under California Rules of Court, rules 8.1105(b) and 8.1110, only the Introduction, part III of the Discussion, and the Disposition are certified for publication.

## INTRODUCTION

James Tilton Ruff (defendant) stands convicted, following a jury trial, of second degree robbery. (Pen. Code, § 212.5, subd. (c); see *id.*, § 211.)[1] He was found to have served multiple prior prison terms. (§ 667.5, subd. (b).) On September 18, 2013, he was sentenced to five years in prison for the robbery, plus a consecutive one-year term for two of the enhancements, for a total of seven years.[2]

On November 4, 2014, voters enacted Proposition 47, "the Safe Neighborhoods and Schools Act" (Proposition 47 or the Act), which went into effect the next day. (*People v. Rivera* (2015) 233 Cal.App.4th 1085, 1089.) The Act reduced certain felony or wobbler drug- and theft-related offenses to misdemeanors, unless committed by an ineligible defendant. (*People v. Lynall* (2015) 233 Cal.App.4th 1102, 1108; see § 1170.18, subd. (i).) Insofar as is pertinent here, it also provided a mechanism by which a person who had completed his or her sentence for a conviction of a felony that was made a misdemeanor by the Act, could apply to the trial court that entered the judgment of conviction and have the felony offense designated as a misdemeanor. (§ 1170.18, subds. (f), (g).) While defendant's appeal was pending, the conviction underlying one of

---

[1] All statutory references are to the Penal Code unless otherwise stated.

[2] The trial court struck the punishment on the other prior prison term enhancements.

Case No. BF146935A is defendant's conviction from which he appeals. Cases Nos. BF142935A, BF143806A, and SF016996A are separate convictions. Defendant was found in violation of probation in each of those cases based on his commission of robbery in case No. BF146935A. The trial court imposed concurrent sentences in each of those cases. Subsequent to his appeal in case No. BF146935A, defendant petitioned this court for an order adding cases Nos. BF142935A, BF143806A, and SF016996A to his appeal. That petition was granted. Subsequently, the trial court, on application of defendant pursuant to section 1170.18, subdivision (f), reduced those separate convictions to misdemeanors and struck all section 667.5, subdivision (b) allegations. In each of those cases, the trial court sentenced defendant to one year, all to run concurrently, and gave him credit for one year. Defendant does not challenge the ruling in those cases on appeal.

the prior prison term enhancements imposed in the current case was designated a misdemeanor under the Act.

In the published portion of this opinion, we hold that a previously imposed sentence enhanced by a section 667.5, subdivision (b) prior prison term is not altered by the granting of a Proposition 47 application reducing the felony that gave rise to that prior prison term to a misdemeanor. The Act does not so operate retroactively. In the unpublished portion, we conclude defendant is not entitled to reversal based on instructional error or juror misconduct. Accordingly, we affirm.

## FACTS[*]

Joshua Ortiz and Dessmar Ayala were cashiers at a Chevron gas station in downtown Bakersfield. At approximately 1:30 a.m. on February 24, 2013, they were working when defendant entered the store. Ortiz was in the "C store" area, which was enclosed on three sides by a counter and was where all the cashiering was done. A variety of cigarettes were displayed along the back wall of the enclosed area. Ayala was headed toward the restrooms to clean them.

Defendant entered the store and went toward the bathroom. Ayala told him the bathrooms were closed for cleaning. Defendant replied, "I don't give a shit. I'm going to take a piss." He then kicked open the unlocked door and went inside. Not wanting to cause a problem, Ayala let him go in and went back to the counter to talk to Ortiz.

A little over a minute later, defendant exited the restroom and walked toward the C store counter area.[3] An unlocked swinging gate allowed access from the main part of the store to that area; however, customers were not allowed to enter. When defendant got close to the gate, Ortiz moved over to guard the gate by positioning his body in front of it, and he told defendant that no one was allowed in that area.

[*]    See footnote, *ante*, page 1.

[3]    Store surveillance video of the incident was played for the jury. We have also viewed the video.

According to Ortiz, defendant lunged toward him with both hands toward Ortiz's neck. Defendant's fist contacted the left side of Ortiz's lower lip, causing Ortiz to go backwards. Ortiz told defendant he was not supposed to be over there, he needed to leave, and Ortiz was going to call the police. Defendant said he was going to come in there and get what he wanted, and he did not care. Defendant then entered the C store area and proceeded to move toward Ortiz's face. Ortiz grabbed him and began to hit him. Ortiz felt "very violated" and afraid.

Defendant grabbed a pack of cigarettes and put them in his pocket. Ayala came over to help Ortiz. Defendant started to exit the C store area as Ayala reached the gate. Defendant shoved Ayala, who backed up because defendant had started swinging at him. Ayala was afraid.

Ortiz told defendant they were going to call the police. Defendant said to call them, that he did not care. Defendant then left the store. Although he did not pay for the cigarettes, Ortiz did not try to prevent him from leaving with them. Ortiz was unaware of any Chevron policy about apprehending someone who committed an offense within the store. He was required to report the incident to his supervisor and did so.

Ayala called the police. Bakersfield Police Officer McIntyre responded within a few minutes. He obtained a description of the perpetrator from Ortiz and Ayala, and broadcast it over radio channels. He subsequently was informed officers had located a similar-looking person about half a mile away. McIntyre transported Ortiz to that location, where Ortiz identified defendant. When contacted by the officers, defendant had a brand new, unopened pack of cigarettes on his person. Ortiz identified the cigarettes.

## DISCUSSION

### I[*]

### REFUSAL TO INSTRUCT ON SELF-DEFENSE

#### A.    Background

Defendant moved, in limine, to be permitted to voir dire prospective jurors on self-defense.  The trial court granted the request, but warned it did not know whether self-defense instructions would ultimately be given, as it did not know what the evidence would show.  It noted that self-defense was not normally a defense to robbery, although it acknowledged there might be instances where it could be.

At the conclusion of the evidentiary portion of trial, defendant requested that the trial court instruct on self-defense (CALCRIM No. 3470).  Defense counsel argued self-defense had been the defense theory all along, and there was evidence supporting it.  The People opposed the request, arguing that self-defense is not a defense to robbery, and giving the instruction would require the People to prove an element they normally would not be required to prove under the robbery instruction, namely that the crime was not committed in self-defense.

The trial court refused to give CALCRIM No. 3470.  It acknowledged that "on some level," defendant was relying on self-defense.  It stated, however:  "[T]his is a case where I just don't see any evidence of self[-]defense, let alone substantial evidence of self[-]defense.  Basically, the clerk walks over with his arms folded.  He just basically unfold[s] his arms, and then the next thing he's being pushed across the booth there by the defendant.  And as the defendant is holding him with one hand and he's grabbing the cigarettes with the other, so — and I do appreciate — and I did allow you to voir dire on this, but I did warn you that you may not get this instruction, and I'm going to refuse this instruction.  I just don't see any evidence of self[-]defense in this case based on what's

---

[*]    See footnote, *ante*, page 1.

5.

been presented to the jury. [¶] Certainly, if there is some — if there is no — by any stretch of imagination it can't be, so I'm going to refuse that instruction 3470 …."

Defendant now contends the trial court erred by refusing to instruct on self-defense. We disagree.

## B. Analysis

Section 211 defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Thus, "[r]obbery is larceny with the aggravating circumstances that 'the property is taken from the person or presence of another …' and 'is accomplished by the use of force or by putting the victim in fear of injury.' [Citation.] In California, '[t]he crime of robbery is a continuing offense that begins from the time of the original taking until the robber reaches a place of relative safety.' [Citation.]" (*People v. Anderson* (2011) 51 Cal.4th 989, 994.) Accordingly, the offense is robbery even when the property was peacefully acquired if force or fear was used to retain it or to carry it away. (*Ibid.*; *People v. Bradford* (2010) 187 Cal.App.4th 1345, 1349.)

The intent required for robbery is the specific intent permanently to deprive the victim of the property. (*People v. Anderson, supra,* 51 Cal.4th at p. 994.) Because "'[a]s a general rule, no crime is committed unless there is a union of act and either wrongful intent or criminal negligence'" (*ibid.*), "'the act of force or intimidation by which the taking is accomplished in robbery must be motivated by the intent to steal ….' [Citation.]" (*Ibid.*) Although all the elements of robbery must be satisfied before the crime is completed, "no artificial parsing is required as to the precise moment or order in which the elements are satisfied." (*People v. Gomez* (2008) 43 Cal.4th 249, 254.) Nevertheless, if "the intent to steal arose only after force was used, the offense is theft, not robbery. [Citations.]" (*People v. Turner* (1990) 50 Cal.3d 668, 688; accord, *People v. Bradford* (1997) 14 Cal.4th 1005, 1055-1056.)

6.

"It is well settled that a defendant has a right to have the trial court, on its own initiative, give a jury instruction on any affirmative defense for which the record contains substantial evidence [citation] — evidence sufficient for a reasonable jury to find in favor of the defendant [citation] — unless the defense is inconsistent with the defendant's theory of the case [citation]." (*People v. Salas* (2006) 37 Cal.4th 967, 982.)[4]  Similarly, "[a] trial court need only give those requested instructions supported by evidence that is substantial.  [Citation.]" (*People v. Bacigalupo* (1991) 1 Cal.4th 103, 125, vacated and remanded on other grounds sub nom. *Bacigalupo v. California* (1992) 506 U.S. 802.)

"In determining whether the evidence is sufficient to warrant a jury instruction, the trial court does not determine the credibility of the defense evidence, but only whether 'there was evidence which, if believed by the jury, was sufficient to raise a reasonable doubt ….' [Citations.]" (*People v. Salas*, *supra*, 37 Cal.4th at pp. 982-983.)  "The court must 'take the proffered evidence as true, "regardless of whether it was of a character to inspire belief.  [Citations.]"  [Citation.]  "'Doubts as to the sufficiency of the evidence to warrant instructions should be resolved in favor of the accused.'  [Citations.]"'  [Citation.]  On appeal, we independently review the court's refusal to instruct on a defense.  [Citation.]" (*People v. Orlosky* (2015) 233 Cal.App.4th 257, 270.)

"[A]n offensive touching, although it inflicts no bodily harm, may nonetheless constitute a battery, which the victim is privileged to resist with such force as is

---

**4**      The trial court's duty to instruct on defenses is often phrased in the disjunctive, "arising 'only if it appears that the defendant is relying on such a defense, *or* if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.' [Citations.]" (*People v. Barton* (1995) 12 Cal.4th 186, 195, italics added; see, e.g., *People v. Nguyen* (2015) 61 Cal.4th 1015, 1052; *People v. Booker* (2011) 51 Cal.4th 141, 179; *People v. Sedeno* (1974) 10 Cal.3d 703, 716, overruled on another ground in *People v. Breverman* (1998) 19 Cal.4th 142, 165, disapproved on another ground in *People v. Flannel* (1979) 25 Cal.3d 668, 684-685, fn. 12.)  As the California Supreme Court made clear in *Flannel*, however, such phraseology is incorrect. (*People v. Flannel*, *supra*, at pp. 684-685, fn. 12.)

7.

reasonable under the circumstances." (*People v. Myers* (1998) 61 Cal.App.4th 328, 335; see §§ 242, 693.) "A person attacked is not bound to retreat but is entitled to stand and defend himself and act as a reasonable man under the circumstances as they appear to him. [Citation.]" (*People v. Duchon* (1958) 165 Cal.App.2d 690, 693.) For a battery to be in self-defense, however, "the defendant must actually and reasonably believe in the need to defend. 'Although the belief in the need to defend must be objectively reasonable, a jury must consider what "would appear to be necessary to a reasonable person in a similar situation and with similar knowledge .…" [Citation.]'" (*People v. Jefferson* (2004) 119 Cal.App.4th 508, 518; see *People v. Humphrey* (1996) 13 Cal.4th 1073, 1082.)

"Self-defense is not … a recognized defense to a charge of robbery." (*People v. Costa* (1963) 218 Cal.App.2d 310, 316.) We assume, for the sake of argument, that evidence of self-defense could be used somehow to show the intent to steal arose only *after* force was used, or that the force was not motivated by the intent to steal. (See *People v. Anderson*, *supra*, 51 Cal.4th at p. 994; *People v. Turner*, *supra*, 50 Cal.3d at p. 688.)

Here, however, there was no substantial evidence defendant was acting in self-defense, that he only formed the intent to take the cigarettes after the altercation concluded, or that he used force to defend himself against a perceived threat instead of to take. The surveillance video clearly shows defendant approach the C store area, stick his head and part of his upper body over the gate and into the area, and look down at the inside of the gate where a latch or lock was likely to be. The evidence at trial suggested no reason why he would seek to enter the C store area other than to take something. According to the video, Ortiz walked over to the gate. As he uncrossed his arms and started to hold out his hands, defendant burst through the gate and started fighting with Ortiz. Defendant did not try to get away, but drove Ortiz to the other end of the C store enclosure, then held him with a hand to his throat area while grabbing a pack of

cigarettes.  In addition, the evidence was uncontradicted that defendant said he was going to come in and get what he wanted and he did not care.  Regardless of when, during the course of the altercation, that statement was made, it and the video establish defendant's intent from the outset was to steal a pack of cigarettes, and thus the intent to steal motivated defendant's use of force.  (See *People v. Gomez, supra*, 43 Cal.4th at pp. 264-265; *People v. Estes* (1983) 147 Cal.App.3d 23, 28.)  There was no substantial evidence of self-defense and, under the circumstances, instructing on it would have added a nonexistent element to the offense of robbery.  Accordingly, the trial court properly refused to give CALCRIM No. 3470.  (See *People v. Anderson*, *supra*, 51 Cal.4th at p. 999.)

## II[*]

### DENIAL OF NEW TRIAL MOTION

A.    **Background**

After the guilty verdict was returned, the jury was polled.  All jurors confirmed that was their personal verdict, although the trial court agreed with defense counsel that Juror No. 11 was a bit slower to say yes than the other jurors.

Defendant subsequently moved for a new trial based on (1) the trial court's refusal to instruct on self-defense and (2) juror misconduct.  In support, he attached a declaration from Juror No. 11, who stated that after trial, he told defense counsel he still felt there was reasonable doubt.  Juror No. 11 represented that he initially voted not guilty, but eventually changed his verdict to guilty even though he felt there was reasonable doubt, and that he voted guilty because he felt pressured by the other jurors.  He stated that after watching the video, he told the other jurors that the clerk used force first, but everyone said he was wrong, so he changed his vote to guilty.  However, he believed that the clerk started the physical fight and defendant defended himself.  It might have helped had there

---

[*]    See footnote, *ante*, page 1.

9.

been instructions on self-defense. Juror No. 11 also related that during deliberations, some of the jurors said things like "'Well, what if that was your kid.'" Defendant also attached a declaration from Juror No. 8, who stated the guilty verdict was her own decision and was not pressured, and that she felt defendant used force to defend against the clerk trying to stop him from stealing. She stated that an instruction on self-defense might have helped; she may have reached the same conclusion, but such an instruction "would have clarified it."

The People opposed the motion. The prosecutor argued evidence of jurors' mental processes was barred by Evidence Code section 1150, subdivision (a); defendant had not made a strong enough showing of juror misconduct to support an evidentiary hearing; and there was no misconduct that would raise a presumption of bias.

At the hearing on the motion, defense counsel argued the statement noted by Juror No. 11 was the equivalent of jurors placing themselves in the victim's shoes, and was conduct prohibited by law. Counsel also observed that jurors sent out a note requesting an additional explanation concerning "force," but then returned a verdict a few minutes later.[5] Counsel argued this confirmed Juror No. 11 was intimidated by other jurors. Finally, she argued that had the jury been given a self-defense instruction, the outcome of trial would have been different. The prosecutor essentially reiterated what was in his written response, and asked the court to find that the basis for the claim of misconduct was simply the jurors' mental processes and so was inadmissible.

The trial court stated it had reviewed the trial testimony and store video, and it did not see any basis for self-defense instructions. As to the jury misconduct issue, the court

---

[5] The jury first retired to deliberate at 2:02 p.m. on July 9, 2013. Shortly after 4:00 that afternoon, jurors sent out a note that read, "please define the word or use of the word 'FORCE' as it [a]ppears in Pen Code 211 #4." The court and counsel were discussing that note at approximately 4:35 p.m., when the jury sent out a second note, indicating a verdict had been reached. The jury was brought back the next morning for the taking of the verdict, and the foreperson confirmed they had indeed reached a verdict.

10.

found the juror declarations amount to the jurors' subjective reasoning or thought processes for the most part. As for the statement made during deliberations, the court saw no basis to hold an evidentiary hearing, because assuming the statement was made and was admissible, it did not amount to misconduct. The court found defendant received a fair trial, and so denied the motion for a new trial.

Defendant now says the trial court erred. We conclude the motion for a new trial was properly denied.

## B.     Analysis

"When a verdict has been rendered … against the defendant, the court may, upon his application, grant a new trial …  [¶] … [¶]  3. When the jury has … been guilty of any misconduct by which a fair and due consideration of the case has been prevented; [¶] … [¶]  5. When the court has misdirected the jury in a matter of law .…"  (§ 1181.)

"The trial court is vested with broad discretion to act upon a motion for new trial. [Citation.]"  (*People v. Dykes* (2009) 46 Cal.4th 731, 809.)  Thus, generally speaking, """[a] trial court's ruling on a motion for new trial is so completely within that court's discretion that a reviewing court will not disturb the ruling absent a manifest and unmistakable abuse of that discretion."'  [Citations.]"  (*People v. Thompson* (2010) 49 Cal.4th 79, 140.)  When the motion is based on jury misconduct, however, "the reviewing court should accept the trial court's factual findings and credibility determinations if they are supported by substantial evidence, but must exercise its independent judgment to determine whether any misconduct was prejudicial.  [Citations.]"  (*People v. Dykes*, *supra*, 46 Cal.4th at p. 809.)

In determining whether the trial court erred, we — as did the trial court — must first determine to what extent, if any, the affidavits supporting the new trial motion were admissible.  As the California Supreme Court has explained:

"Evidence Code section 1150, subdivision (a), provides:  'Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be

11.

received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. *No evidence is admissible* to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent or to dissent from the verdict or *concerning the mental processes by which it was determined.*"  ([Original italics].)

"This statute distinguishes 'between proof of overt acts, objectively ascertainable, and proof of the subjective reasoning processes of the individual juror, which can be neither corroborated nor disproved ….' [Citation.]  'This limitation prevents one juror from upsetting a verdict of the whole jury by impugning his own or his fellow jurors' mental processes or reasons for assent or dissent.  The only improper influences that may be proved under [Evidence Code] section 1150 to impeach a verdict, therefore, are those open to sight, hearing, and the other senses and thus subject to corroboration.' [Citations.]" (*People v. Steele* (2002) 27 Cal.4th 1230, 1260-1261.)

Among the overt acts that are admissible under Evidence Code section 1150, subdivision (a) are statements.  (*In re Stankewitz* (1985) 40 Cal.3d 391, 398; *People v. Engstrom* (2011) 201 Cal.App.4th 174, 183-184.)  Even when such evidence may be received, however, "it must be admitted with caution."  (*In re Stankewitz*, *supra*, 40 Cal.3d at p. 398.)  Our state high court has "emphasize[d] that, when considering evidence regarding the jurors' deliberations, a trial court must take great care not to overstep the boundaries set forth in Evidence Code section 1150.  The statute may be violated not only by the admission of jurors' testimony describing their own mental processes, but also by permitting testimony concerning statements made by jurors in the course of their deliberations."  (*People v. Hedgecock* (1990) 51 Cal.3d 395, 418-419.) "Statements have a greater tendency than nonverbal acts to implicate the reasoning processes of jurors — e.g., what the juror making the statement meant and what the juror hearing it understood."  (*In re Stankewitz*, *supra*, 40 Cal.3d at p. 398.)  "In rare circumstances a statement by a juror during deliberations may itself be an act of misconduct, in which case evidence of that statement is admissible.  [Citation.]  But when a juror in the course of deliberations gives the reasons for his or her vote, the words are

12.

simply a verbal reflection of the juror's mental processes. Consideration of such a statement as evidence of those processes is barred by Evidence Code section 1150." (*People v. Hedgecock*, *supra*, 51 Cal.3d at p. 419.)

With these principles in mind, we turn to the juror declarations submitted in support of defendant's new trial motion. With one possible exception, which we discuss *post*, the declarations ran afoul of Evidence Code section 1150, subdivision (a) and so were inadmissible. "'"[A] verdict may not be impeached by inquiry into the juror's mental or subjective reasoning processes, and evidence of what the juror 'felt' or how he [or she] understood the trial court's instructions is not competent."'" [Citations.]" (*People v. Lindberg* (2008) 45 Cal.4th 1, 53; accord, *People v. Steele*, *supra*, 27 Cal.4th at p. 1261.) "The mere fact that such mental process was manifested in conversation between jurors during deliberations does not alter this rule. [Citation.]" (*People v. Sanchez* (1998) 62 Cal.App.4th 460, 476.) Similarly, the reasons Juror No. 11 changed his vote to guilty were "demonstrative only of [his] mental processes and the subjective considerations which influenced [his] verdict," and were also inadmissible. (*People v. Peavey* (1981) 126 Cal.App.3d 44, 51.)

We assume (as did the trial court) the statement recounted by Juror No. 11, "'Well, what if that was your kid,'" was admissible. We next determine whether it constituted misconduct. In this regard, "[a]n accused has a constitutional right to a trial by an impartial jury. [Citations.] An impartial jury is one in which no member has been improperly influenced [citations] and every member is '"capable and willing to decide the case solely on the evidence before it"' [citation]." (*In re Hamilton* (1999) 20 Cal.4th 273, 293-294.) "When the overt event is a direct violation of the oaths, duties, and admonitions imposed on … jurors, such as when a juror … shares improper information with other jurors, the event is called juror misconduct. [Citations.]" (*Id*. at p. 294.)

> "'Misconduct by a juror … usually raises a rebuttable "presumption" of prejudice. [Citations.]' [Citation.] However, '[t]he introduction of much

of what might strictly be labeled "extraneous law" cannot be deemed misconduct. The jury system is an institution that is legally fundamental but also fundamentally human. Jurors bring to their deliberations knowledge and beliefs about general matters of law and fact that find their source in everyday life and experience. That they do so is one of the strengths of the jury system. It is also one of its weaknesses; it has the potential to undermine determinations that should be made exclusively on the evidence introduced by the parties and the instructions given by the court. Such a weakness, however, must be tolerated. "[I]t is an impossible standard to require … [the jury] to be a laboratory, completely sterilized and freed from any external factors." [Citation.] Moreover, under that "standard" few verdicts would be proof against challenge.' [Citation.] 'The safeguards of juror impartiality … are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote.' [Citation.]" (*People v. Danks* (2004) 32 Cal.4th 269, 302-303.)

Defendant contends the statements by other jurors pressuring Juror No. 11 to think about the store clerk as if the clerk were Juror No. 11's own child were an appeal to bias and showed jurors disregarded the court's instruction to follow the law and not to "let bias, sympathy, prejudice or public opinion influence" their decision. We reject this reading of the juror's declaration. It is not clear whether the statement referred to one of the store clerks or to defendant. Even assuming it referred to a clerk, it lacks any context. At most, it appears to be an attempt to persuade, rather than an indication of violation of the court's instructions. "'[J]urors can be expected to disagree, even vehemently, and to attempt to persuade disagreeing fellow jurors by strenuous and sometimes heated means.' [Citation.]" (*People v. Thompson*, *supra*, 49 Cal.4th at p. 141.) The comment did not rise to the level of misconduct. (Compare *In re Stankewitz*, *supra*, 40 Cal.3d at p. 396 with *People v. Thompson*, *supra*, 49 Cal.4th at pp. 140-141.)[6]

---

[6] The trial court was not required to hold an evidentiary hearing to determine the meaning or context of the statement. Such a hearing "should be held *only* when the defense has come forward with evidence demonstrating a *strong possibility* that prejudicial misconduct has occurred." (*People v. Hedgecock*, *supra*, 51 Cal.3d at p. 419, italics added.) Defendant did not do so here.

The trial court properly denied the motion for a new trial.

## III

### PROPOSITION 47'S EFFECT ON PRIOR PRISON TERM ENHANCEMENTS

#### A.     Background

The information in this case alleged, and the trial court found, defendant had suffered the following enhancements under section 667.5, subdivision (b):

— A conviction for violating Health and Safety Code section 11377, subdivision (a), suffered on or about March 8, 2007, in Kern County Superior Court case No. BF116218A.

— A conviction for violating section 69, suffered on or about March 8, 2007, in Kern County Superior Court case No. BF115630A.

— A conviction for violating Health and Safety Code section 11377, subdivision (a), suffered on or about July 6, 2010, in Kern County Superior Court case No. SF015607A.

— A conviction for violating Health and Safety Code section 11377, subdivision (a), suffered on or about January 6, 2012, in Kern County Superior Court case No. SF016331A.

— A conviction for violating Health and Safety Code section 11377, subdivision (a), suffered on or about October 31, 2012, in Kern County Superior Court case No. BF143806A.

Defendant was sentenced on September 18, 2013.  At sentencing, the court found defendant served a single prison term in cases Nos. BF116218A and BF115630A. Accordingly, it struck the punishment as to case No. BF116218A, and imposed a one-year term, pursuant to section 667.5, subdivision (b), for case No. BF115630A.  It explained that case No. BF115630A was a conviction for violating section 69, and so involved some sort of violence.  The court also imposed an additional one-year term, pursuant to section 667.5, subdivision (b), for defendant's prior conviction in case

15.

No. SF016331A, but struck the punishment for defendant's prior convictions in cases Nos. SF015607A and BF143806A. The court explained it felt a seven-year total term was a just punishment under the circumstances of the case, and in light of defendant's mental health issues.

Proposition 47 went into effect on November 5, 2014. (Cal. Const., art. II, § 10, subd. (a).) On December 18, 2014, defendant filed petitions under section 1170.18 in cases Nos. BF116218A, BF143806A, SF015607A, and SF016331A.

On April 6, 2015, the trial court granted defendant's petitions.[7] As relevant here,[8] the trial court reclassified the conviction in case No. SF016331A as a misdemeanor "for all purposes." It expressly ordered no further parole or sentence modification.

---

**7** The petitions/applications were ruled on by a different judge than presided over trial and imposed sentence in defendant's current robbery case. (See § 1170.126, subd. (j).)

**8** In his supplemental opening and reply briefs, defendant states the trial court imposed enhancements in case No. BF146935A based on allegations three and five, i.e., cases Nos. SF015607A and BF143806A. Defendant has misread the record. At pages 457 and 458 of the reporter's transcript, the trial court stated: "Now, with regards to the sentencing enhancements pursuant to [section] 667.5[, subdivision ](b), there were five. I'm going to — with regards to the first one alleged, that's BF116218A, although, I did find he did serve a separate prior prison term. That apparently is not the case based on my review of the probation report or the re-review of the evidence. [¶] He did serve the same — it was the same prison term he served in the second prior alleged in BF115630A which was the [section] 69, so I'm going to strike the punishment for the BF116218A on the basis it's not … actually a separate prior prison term as which is BF115630 which I will impose a one[-]year term, an additional term pursuant to [section] 667.5[, subdivision ](b) for his prior conviction in that matter. It was a [section] 69 offense and it did involve some sort of violence. I'm also going to impose another additional one[-]year term pursuant to [section] 667.5[, subdivision ](b) for … SF016331A, and that was a drug conviction that he did serve a prior separate prison term for, and I'm going to strike the punishment for the third alleged prior conviction SF015607A, and the fifth BF143806A …. [¶] The punishment for those two prior convictions as well, the third alleged and the fifth alleged prior convictions. I'm going to strike the punishment."

As defendant recognizes, Proposition 47 had no impact on section 69, for which defendant was convicted in case No. BF115630A. Accordingly, the one-year

16.

The issue before us is whether the additional one-year term imposed by the trial court pursuant to section 667.5, subdivision (b), for defendant's prior conviction in case No. SF016331A must now be stricken because, subsequent to defendant's September 18, 2013, sentencing, that prior conviction was reduced to a misdemeanor pursuant to section 1170.18, subdivision (f). Defendant says it must. The Attorney General disagrees, as do we.[9]

## B.     Analysis

Section 1170.18, enacted as part of Proposition 47, provides in pertinent part:

> "(f) A person who has completed his or her sentence for a conviction … of a felony … who would have been guilty of a misdemeanor under this act had this act been in effect at the time of the offense, may file an application before the trial court that entered the judgment of conviction in his or her case to have the felony conviction or convictions designated as misdemeanors.

---

enhancement imposed, pursuant to section 667.5, subdivision (b), is not affected by Proposition 47.

[9]     The Attorney General contends defendant has forfeited his argument because he did not raise it in the lower court. The Attorney General says: "[Defendant's] petition for recall of his sentence below did not mention the section 667.5, subdivision (b), enhancements imposed in his case. [Citation.] Neither he nor his appointed counsel challenged the enhancements at the lower court hearing. [Citation.] He never invoked section 1170.18, subdivision (f), to seek reclassification of any of his prior felony convictions." To the contrary, defendant's petitions in cases Nos. BF116218A, SF015607A, and SF016331A all expressly requested that his felony convictions be reduced to misdemeanors under section 1170.18, subdivisions (f) and (g). More importantly, defendant had already filed his notice of appeal, and his appeal was pending, in the case in which the section 667.5, subdivision (b) enhancements were imposed. While the lower court had jurisdiction to rule on defendant's section 1170.18 applications, it had no jurisdiction to alter the sentencing imposed in defendant's current robbery case while that case was on appeal. (*People v. Alanis* (2008) 158 Cal.App.4th 1467, 1472-1473 & cases cited; cf. *People v. Superior Court (Gregory)* (2005) 129 Cal.App.4th 324, 331-332.) Thus, it would have been futile for defendant to challenge the enhancements in the hearing on his applications. Accordingly, we reject the Attorney General's claim of forfeiture.

17.

"(g) If the application satisfies the criteria in subdivision (f), the court shall designate the felony offense or offenses as a misdemeanor."

Defendant was convicted, in case No. SF016331A, of possession of a controlled substance in violation of Health and Safety Code section 11377, subdivision (a). At the time, the offense was a "wobbler," meaning it could be a felony or a misdemeanor, depending on the punishment imposed. (Former Health & Saf. Code, § 11377, subd. (a); see § 17, subd. (a).) As defendant served a prison term for the offense, it was classified as a felony. (See § 17, subd. (b).) Post-Proposition 47, Health and Safety Code section 11377, subdivision (a) is a misdemeanor, punishable "by imprisonment in a county jail for a period of not more than one year," unless the offender has certain specified prior convictions.[10] According to the probation officer's report, defendant has no such prior convictions, and the Attorney General does not claim otherwise. Thus, had the Act been in effect at the time defendant committed the violation of Health and Safety Code section 11377, subdivision (a) for which he was convicted in case No. SF016331A, he could only have been convicted of a misdemeanor.

Subdivision (k) of section 1170.18, provides in pertinent part:

"Any felony conviction that is … designated as a misdemeanor under subdivision (g) shall be considered a misdemeanor for all purposes, except that such resentencing shall not permit that person to own, possess, or have in his or her custody or control any firearm or prevent his or her conviction under Chapter 2 (commencing with Section 29800) of Division 9 of Title 4 of Part 6."[11]

Defendant argues his conviction in case No. SF016331A is now "a misdemeanor for all purposes" except certain firearm restrictions. (§ 1170.18, subd. (k).) He cites to

---

**10** The prior convictions enumerated in the statute are "for an offense specified in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 of the Penal Code or for an offense requiring registration pursuant to subdivision (c) of Section 290 of the Penal Code." (Health & Saf. Code, § 11377, subd. (a).)

**11** The specified statutes contain restrictions and prohibitions on firearm possession for certain persons.

*People v. Park* (2013) 56 Cal.4th 782 (*Park*) and says, "when a wobbler has been reduced to a misdemeanor … the prior conviction does not constitute a prior felony conviction within the meaning of section 667[, subdivision ](a)."

In *Park*, the defendant's sentence for his current crimes was enhanced by five years under section 667, subdivision (a), based on his prior conviction of a serious felony. *Prior to* the defendant's commission of his current crimes, however, the trial court reduced the prior offense to a misdemeanor under section 17, subdivision (b)(3), and then dismissed it pursuant to section 1203.4, subdivision (a)(1). (*Park*, *supra*, 56 Cal.4th at p. 787.)

Section 17, subdivision (b)(3) states in part, "When a crime is punishable, in the discretion of the court, either by imprisonment in the state prison or imprisonment in a county jail …, it is a misdemeanor for all purposes …  [¶] … [¶]  … [w]hen the court grants probation to a defendant without imposition of sentence and at the time of granting probation … declares the offense to be a misdemeanor."

In *Park*, the Court of Appeal held the conviction remained a prior serious felony for purposes of sentence enhancement under section 667, subdivision (a), but the California Supreme Court disagreed:  "[W]hen the court in the *prior proceeding* properly exercised its discretion by reducing the … conviction to a misdemeanor, that offense no longer qualified as a prior serious *felony* within the meaning of section 667, subdivision (a), and could not be used, under that provision, to enhance defendant's sentence."  (*Park*, *supra*, 56 Cal.4th at p. 787, first italics added.)

Defendant's reliance on *Park* is misplaced.  In *Park*, the reduction and dismissal occurred prior to the defendant's commission of his current crimes.  (*Park*, *supra*, 56 Cal.4th at p. 787.)  Here, the reduction to a misdemeanor pursuant to section 1170.18, subdivision (f), occurred *after* defendant's commission, conviction, and sentence for his current crimes.  In *Park*, in response to an argument that *People v. Feyrer* (2010) 48 Cal.4th 426 and *People v. Banks* (1959) 53 Cal.2d 370 were contrary to its conclusion,

19.

the court stated: "There is no dispute that, under the rule in those cases, defendant would be subject to the section 667[, subdivision ](a) enhancement had he committed and been convicted of the present crimes before the court reduced the earlier offense to a misdemeanor." (*Park*, *supra*, 56 Cal.4th at p. 802.)

The issue before us is not whether defendant's conviction and prison commitment in case No. SF016331A can now be used to enhance a future sentence pursuant to section 667.5, subdivision (b), should defendant commit a new felony upon release from prison on his current sentence. The issue is whether defendant's current sentence, enhanced pursuant to section 667.5, subdivision (b), must now be altered because, *subsequent to* defendant's sentencing, the conviction that gave rise to that enhancement was reduced to a misdemeanor pursuant to section 1170.18, subdivision (f). In other words, does the Act operate retroactively? To make that determination, we look to the language of section 1170.18 and to voter intent.

Section 3 specifies that no part of the Penal Code "is retroactive, unless expressly so declared."[12] This language "erects a strong presumption of prospective operation, codifying the principle that, 'in the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature [or electorate] … must have intended a retroactive application.' [Citations.] Accordingly, '"a statute that is ambiguous with respect to retroactive application is construed … to be unambiguously prospective."' [Citation.]" (*People v. Brown* (2012) 54 Cal.4th 314, 324.)

An "important, contextually specific qualification" to the prospective-only presumption regarding statutory amendments was set forth in *In re Estrada* (1965) 63

---

**12** Defendant asserts section 1170.18 "explicitly provides for retroactive relief," but then merely points to the language of subdivision (k), that any felony conviction designated as a misdemeanor "shall be considered a misdemeanor for all purposes," and asserts there is no language in the statute precluding the striking of the prior conviction used to enhance his sentence.

Cal.2d 740 (*Estrada*). (*People v. Brown*, *supra*, 54 Cal.4th at p. 323.) That qualification is: "When the Legislature [or electorate] has amended a statute to reduce the punishment for a particular criminal offense, we will assume, absent evidence to the contrary, that the Legislature [or electorate] intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date. [Citation.]" (*Ibid.*, fn. omitted.)

Although *Estrada*'s language is broad, the California Supreme Court has emphasized the rule's narrowness (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1196): "*Estrada* is today properly understood, not as weakening or modifying the default rule of prospective operation codified in section 3, but rather as informing the rule's application in a specific context by articulating the reasonable presumption that a legislative [or voter] act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments. [Citation.]" (*People v. Brown*, *supra*, 54 Cal.4th at p. 324.)

The question of retroactivity is ultimately one of legislative — or, in this case, voter — intent. (*People v. Shabazz* (2015) 237 Cal.App.4th 303, 312-313; see *People v. Nasalga* (1996) 12 Cal.4th 784, 793.) "To resolve this very specific retroactivity question, we apply the well[-]settled rules governing interpretation of voter intent[.]" (*People v. Shabazz*, *supra*, 237 Cal.App.4th at p. 313.) "'In interpreting a voter initiative …, we apply the same principles that govern statutory construction. [Citation.] Thus, … "we turn first to the language of the statute, giving the words their ordinary meaning." [Citation.] … The statutory language must also be construed in the context of the statute as a whole and the overall statutory scheme [in light of the electorate's intent]. [Citation.] … When the language is ambiguous, "we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet." [Citation.]' [Citation.] [¶] In other words, our 'task is simply to interpret and apply the

initiative's language so as to effectuate the electorate's intent.' [Citation.]" (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 900-901.)[13]

The Act clearly was intended to lessen punishment for "nonserious, nonviolent crimes like petty theft and drug possession" (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 3, subd. (3), p. 70)[14], in order "to ensure that prison spending is focused on violent and serious offenses .…" (Voter Information Guide, Gen. Elec., *supra*, text of Prop. 47, § 2, p. 70). This purpose was conveyed to voters, both in the text of the then-proposed law and in the arguments supporting Proposition 47. (Voter Information Guide, Gen. Elec., *supra*, argument in favor of Prop. 47, p. 38; *id.*, rebuttal to argument against Prop. 47, p. 39; *id.*, text of Prop. 47, §§ 2, 3, p. 70.)

Nowhere, however, do the Act or the ballot materials reference section 667.5, subdivision (b) or mention recidivist enhancements, and the Act made no amendments to any such provisions. Two of the Act's expressly stated purposes, however, are to "[a]uthorize *consideration* of resentencing for anyone who is currently serving a sentence for any of the offenses" that would be made misdemeanors by the Act, and to "[r]equire a thorough review of criminal history and risk assessment of any individuals before resentencing to ensure that they do not pose a risk to public safety." (Voter Information Guide, Gen. Elec., *supra*, text of Prop. 47, § 3, subds. (4), (5), p. 70, italics added.)

---

[13]  The Attorney General contends the words of section 1170.18, subdivisions (f) and (g), "operate[] as the functional equivalent of a savings clause giving Proposition 47 prospective-only application." (See *Estrada*, *supra*, 63 Cal.2d at pp. 747-748.) She cites to *People v. Noyan* (2014) 232 Cal.App.4th 657, 672. The appellate court in *Noyan*, however, in a response to the defendant's argument Proposition 47 applied retroactively to his case and so his Health and Safety Code section 11350 convictions should be reduced from felonies to misdemeanors, simply held the defendant was limited to the statutory remedy of petitioning for recall of sentence in the trial court once his judgment was final. In our view, the provisions of section 1170.18, subdivisions (f) and (g) tell us nothing about the voters' intent with respect to the issue presented in this appeal.

[14]  The voter guide can be accessed at <http://vigarchive.sos.ca.gov/2014/general/en/pdf/> [as of Feb. 10, 2016].

Voters were assured the Act would keep dangerous criminals locked up (Voter Information Guide, Gen. Elec., *supra*, argument in favor of Prop. 47, p. 38), and that it would not require automatic release of anyone: "There is no automatic release. [Proposition 47] includes strict protections to protect public safety and make sure rapists, murderers, molesters and the most dangerous criminals cannot benefit." (*Id*., rebuttal to argument against Prop. 47, p. 39.)

"Imposition of a sentence enhancement under … section 667.5 requires proof that the defendant: (1) was previously convicted of a felony; (2) was imprisoned as a result of that conviction; (3) completed that term of imprisonment; and (4) did not remain free for five years of both prison custody and the commission of a new offense resulting in a felony conviction. [Citation.]" (*People v. Tenner* (1993) 6 Cal.4th 559, 563.)[15] "Sentence enhancements for prior prison terms are based *on the defendant's status as a recidivist, and not on the underlying criminal conduct*, or the act or omission, giving rise to the current conviction. [Citations.]" (*People v. Gokey* (1998) 62 Cal.App.4th 932, 936, italics added; see *People v. Coronado* (1995) 12 Cal.4th 145, 158-159; *People v. Dutton* (1937) 9 Cal.2d 505, 507.) Thus, the purpose of an enhancement under section

---

**15** Section 667.5, subdivision (b) currently provides: "Except where subdivision (a) applies, where the new offense is any felony for which a prison sentence or a sentence of imprisonment in a county jail under subdivision (h) of Section 1170 is imposed or is not suspended, in addition and consecutive to any other sentence therefor, the court shall impose a one-year term for each prior separate prison term or county jail term imposed under subdivision (h) of Section 1170 or when sentence is not suspended for any felony; provided that no additional term shall be imposed under this subdivision for any prison term or county jail term imposed under subdivision (h) of Section 1170 or when sentence is not suspended prior to a period of five years in which the defendant remained free of both the commission of an offense which results in a felony conviction, and prison custody or the imposition of a term of jail custody imposed under subdivision (h) of Section 1170 or any felony sentence that is not suspended. A term imposed under the provisions of paragraph (5) of subdivision (h) of Section 1170, wherein a portion of the term is suspended by the court to allow mandatory supervision, shall qualify as a prior county jail term for the purposes of the one-year enhancement."

23.

667.5, subdivision (b) "is 'to punish individuals' who have shown that they are "'hardened criminal[s] who [are] undeterred by the fear of prison.'" [Citation.]" (*In re Preston* (2009) 176 Cal.App.4th 1109, 1115.) The enhancement's focus on the service of a prison term "indicates the special significance which the Legislature has attached to incarceration in our most restrictive penal institutions." (*People v. Levell* (1988) 201 Cal.App.3d 749, 754.)

A person who refuses to reform even after serving time in prison is clearly and significantly more dangerous than someone who merely possesses drugs for personal use or shoplifts. We cannot conclude, from the language of the Act or the ballot materials, that voters deemed such persons to be nonserious, nondangerous offenders, and so intended the Act to reach back to ancillary consequences such as enhancements resulting from recidivism considered serious enough to warrant additional punishment. Accordingly, section 3's default rule or prospective operation, and not *Estrada*'s narrow rule of retroactivity, applies.

*People v. Flores* (1979) 92 Cal.App.3d 461 (*Flores*) does not lead to a different result. In that case, the defendant was convicted in 1966 for possessing marijuana. In 1977, he sold heroin. His sentence for the 1977 offense was enhanced by one year, pursuant to section 667.5, because of his 1966 conviction. (*Flores*, *supra*, at pp. 464, 470.) On appeal, the defendant claimed the enhancement was improper under *Estrada*, because Health and Safety Code section 11357 was amended, in 1975, to make possession of marijuana a misdemeanor. (*Flores*, *supra*, at p. 470.) In agreeing with the defendant, the appellate court stated:

> "The amendatory act imposing the lighter sentence for possession of marijuana can obviously be applied constitutionally to prevent the enhancement of a new sentence by reason of a prior conviction of possession. Moreover, in the case at bench we are not confronted by legislative silence with respect to its purpose regarding penalties for possession of marijuana.

24.

"Effective January 1, 1976, Health and Safety Code section 11361.5, subdivision (b) was enacted to authorize the superior court, on petition, to order the destruction of all records of arrests and convictions for possession of marijuana, held by any court or state or local agency and occurring prior to January 1, 1976. [Citation.] In 1976, [Health and Safety Code] section 11361.7 was added to provide in pertinent part that: '(a) Any record subject to destruction … pursuant to Section 11361.5, or more than two years of age, or a record of a conviction for an offense specified in subdivision (a) or (b) of Section 11361.5 which became final more than two years previously, *shall not be considered to be accurate, relevant, timely, or complete for any purposes by any agency or person.…* (b) No public agency shall alter, amend, assess, condition, deny, limit, postpone, qualify, revoke, surcharge, or suspend any certificate, franchise, incident, interest, license, opportunity, permit, privilege, right, or title of any person because of an arrest or conviction for an offense specified in subdivision (a) or (b) of Section 11361.5 … on or after the date the records … are required to be destroyed … or two years from the date of such conviction … with respect to … convictions occurring prior to January 1, 1976.…' [Citation.] ([Original italics].)" (*Flores*, *supra*, 92 Cal.App.3d at pp. 471-472.)

The appellate court found the statutory language clear and unambiguous. (*Flores*, *supra*, 92 Cal.App.3d at p. 472.) It concluded: "In view of the express language of the statute and the obvious legislative purpose, it would be unreasonable to hold that the Legislature intended that one who had already served a felony sentence for possession of marijuana should be subjected to the additional criminal sanction of sentence enhancement." (*Id*. at p. 473.) The court found the new laws constituted "a legislative declaration that the old laws were too severe for the quantum of guilt involved" (*ibid*.), and distinguished a situation in which the California Supreme Court refused to give retroactive effect to an amendment to section 17 (*Flores*, *supra*, at p. 473) in part because "[t]here was no suggestion there, as there is here, that the Legislature intended retroactive application" (*id.* at p. 474).

In *Flores*, as in *Park*, and in contrast to the present case, the current offense was committed *after* the earlier offense was reduced to a misdemeanor. Moreover, the Act contains no clear expression with respect to retroactivity as was found in *Flores*. The closest it gets is the statement, in subdivision (k) of section 1170.18, that "[a]ny felony

25.

conviction that is … designated as a misdemeanor under subdivision (g) shall be considered *a misdemeanor for all purposes*, except [specified firearm laws]." (Italics added.)

This language, the italicized portion of which is identical to that contained in section 17, subdivision (b), is not necessarily conclusive, however. (*Park*, *supra*, 56 Cal.4th at pp. 793, 794.) It has not been read to mean a defendant could avoid an imposed sentence enhancement in his current sentence by having the prior offense subsequently reduced to a misdemeanor. (*Id.* at p. 802.) Nothing in the language of the Act or the ballot materials indicates an intention to override the operation of section 667.5, subdivision (b), at least retroactively.

Defendant served a prison term for the prior conviction at a time the offense was a felony. It is the service of that prison term, coupled with defendant's continuing recidivism, that section 667.5, subdivision (b) punishes. Absent a clear statement of the electorate's intent to the contrary — which we do not find — we conclude that, because defendant served a prison term for his conviction in case No. SF016331A at a time when the offense was a felony, and had his current sentence enhanced accordingly *before* the conviction was reduced, he is not entitled to relief.[16]

This conclusion does not render surplusage the "for all purposes" language of section 1170.18, subdivision (k). Our determination is one of the electorate's intent. "Rules such as those directing courts to avoid interpreting legislative enactments as surplusage are mere guides and will not be used to defeat legislative intent. [Citations.]" (*People v. Cruz* (1996) 13 Cal.4th 764, 782.) Moreover, "ambiguities are not interpreted in the defendant's favor if such an interpretation would provide an absurd result, or a result inconsistent with apparent legislative intent. [Citation.]" (*Id*. at p. 783.)

---

[16]    We are not presented with a situation in which there is some constitutional infirmity in the prior conviction. (See, e.g., *People v. Sumstine* (1984) 36 Cal.3d 909, 914.)

Nor does our conclusion violate principles of equal protection. "'The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally. [Citation.] Accordingly, "'[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.'" [Citation.] "This initial inquiry is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.'" [Citation.]' [Citations.]" (*People v. Losa* (2014) 232 Cal.App.4th 789, 792-793.)

Defendant fails to convince us someone who served a prison term for a felony and had his or her subsequent sentence enhanced therefor while the prior offense was a felony, is similarly situated to someone whose prior conviction was reduced to a misdemeanor before it was used to enhance his or her current sentence.[17] In any event, it is settled that "[t]he right to equal protection of the law generally does not prevent the state from setting a starting point for a change in the law. '[T]he Fourteenth Amendment does not forbid statutes and statutory changes to have a beginning and thus to discriminate between the rights of an earlier and later time.' [Citation.] The same rule applies to changes in sentencing law that benefit defendants." (*People v. Lynch* (2012) 209 Cal.App.4th 353, 359.)

---

[17] Were we to find the two were similarly situated, we would conclude the applicable rational relationship test was satisfied. (See *People v. Yearwood* (2013) 213 Cal.App.4th 161, 178-179.)

**DISPOSITION**

The judgment is affirmed.

_____
DETJEN, J.

WE CONCUR:

_____
GOMES, Acting P.J.

_____
POOCHIGIAN, J.